James H. Glavin Jr., J.
This is a claim for damages arising ■out of an assault upon Elizabeth -Cobb, an infant over the age of 14 years, on the premises of and by an employee of the State of New York.
The guardian for the infant claimant herein appears to have been duly appointed and to be duly serving. The claim was properly, timely and duly filed. It has not been transferred or assigned, nor has it been submitted to any other court or tribunal for audit and determination.
The claim of the infant’s maternal aunt, Jongline Foster, individually, for medical expenses was previously dismissed as not timely filed.
Elizabeth Cobb, an infant of approximately 15 years of age, was sent by the Family Court of Albany County to the New York State Training School for Girls at Hudson, New York, in January, 1964.
Miss Cobb was alone in Cottage 2, her assigned living quarters, at about 3:00 p.m. on a day in September, 1964. She was preparing for her daily bath in accord with .school regulations, when Mr. Vernon Douglas entered her room in the cottage and forcibly raped the infant claimant who attempted unsuccessfully to resist. Mr. Douglas threatened to kill the infant claimant if she told anyone. Douglas was a supervisory employee at the New York Training School and direct superior of the Cottage 2 housemother.
*282 The housemother, Mrs. Helen Irving, returned to Cottage 2 afterwards and found Vernon Douglas and Elizabeth Cobb there.
After Elizabeth Cobb told Vernon Douglas that she missed her menstrual period, Douglas arranged for the infant claimant to go home for a trial visit in the middle of October, 1964. The school menstrual record chart showed entries from the 10th through the 15th of October, 1964 and that she had been issued sanitary items although she was home on a trial visit with the claimant guardian, Jongline Foster, at the time. Mr. Douglas had access to the school menstrual record charts. The infant claimant testified that she had no menstrual periods from early September, 1964 until after January, 1965. She returned to the training school after her week trial visit but was not given a physical examination.
In November, 1964, Vernon Douglas arranged for Elizabeth Cobb to be paroled from school to return and live with the claimant guardian, Jongline Foster.
Mr. Douglas visited Miss Cobb several times at her home and toward the end of December, 1964, gave her pills to take and directions how to take them.
Late on January 6, 1965, at home, Elizabeth Cobb suffered a miscarriage of the child she was carrying and passed the fetus. ■She was admitted to the emergency room of Albany Medical Center the next day where her condition was diagnosed as having become pregnant in September, 1964 and having suffered a miscarriage. She sustained an operation to repair her uterus as a result of the miscarriage.
The services of Vernon Douglas at the New York State Training School for Girls were terminated in April, 1965.
Upon the facts in this case and applicable legal principles it is apparent that the infant claimant is entitled to an award. How much that award .should be is, as usual and always, a perplexing question.
The supervision and care of the young girls at the New York State Training School left much to be desired. For example, Mrs. Helen Irving was employed by the State of New York as a housemother for Cottage 2, the assigned residence of the infant claimant. Yet, she was not present there during the occurrence in question. Miss Cobb was left alone and unsupervised, except for the presence of Vernon Douglas, the housemother’s immediate superior and supervisor.
Likewise, supervision of the school records was hardly adequate. For example, the entries appearing on the infant claimant’s menstrual chart indicating she received and used sanitary *283 items in October, 1964 when she was not even at the school, are highly incredible. This is especially so since Mr. Douglas arranged for her trial visit at home during that period.
The State made a motion to dismiss the claim at the beginning of the trial on the basis that the State was not liable for the assault committed by its employee. As authority, the State cited Anderson v. Metropolitan Life Ins. Co. (128 Misc. 144 [1926], affd. 220 App. Div. 779). That case is distinguishable from the present case, however, in many significant respects. For example, the assault took place away from the employer’s premises and did not involve an employee charged with custodial care of the victim. The motion was and is, therefore, denied.
It is clear that the State of New York is liable for assault by its employees. (Huff v. State of New York, 271 App. Div. 1040 [1947].) The present case is to be distinguished from McCandless v. State of New York (6 Misc 2d 391 [1956], 3 A D 2d 600, affd. 4 N Y 2d 797) because Elizabeth Cobb was, at the time of the assault, under the direct supervision, care and control of the State through its duly authorized and acting agent and employee, Mr. Douglas.
Obviously, Mr. Douglas was not a suitable supervisor and custodian of the child. She was placed under the guardianship of the State of New York through the intermediary of Mr. Douglas, on premises owned by the State of New York and to which she was assigned. The infant claimant, at the time was approximately 15 years old and was properly, in Cottage 2, her temporary home, in her own room, going about her duties as required. She was the ward of the State and at that time she was the ward of Vernon Douglas, as the representative of the State.
Surely she is entitled to as much respect for her person as was the adult plaintiff in Stone v. Eisen Co. (219 N. Y. 205 [1916]). In that case the plaintiff placed herself in the control and protection of the defendant’s employee for treatment of her feet. The complaint stated a cause of action against the employer for the assault and attempted rape by the employee.
When a special relationship is created such as that of carrier and passenger, innkeeper and guest, bathhouse keeper and patron and hospital and patient, the courts have recognized the unique duty owing by the employer to protect against personal attacks and intentional harm by employees. (See Stone, supra, and cases cited therein. See, also, Prosser, Law of Torts [3d ed., 1964], pp. 344 — 345, 476-478 ; 2 Harper and James, The Law of Torts [1956], § 26.9; Restatement 2d, Torts, vol. 2, § 317.)
*284 In De Wald v. Seidenberg (297 N. Y. 935, 338 [1948]), the Court of Appeals held it was established law in this jurisdiction that: “ ‘ The master who puts the servant in a place of trust or responsibility, or commits to him the management of Ms business or the care of Ms property, is justly held responsible when the .servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty or authority, and inflicts an unjustifiable injury upon another. ’ ” This rule of law was more recently enunciated and reaffirmed by the Court of Appeals in Sims v. Bergamo (3 N Y 2d 531, 534 [1957]).
How can it be .said that there is less of a duty owing to a child to which the State stands in the relation of parens patriae.
It is obvious, and this court holds, that once the rape was established upon the facts in this case, the State became liable for the acts of Vernon Douglas as its representative charged with the protection and custody of Elizabeth Cobb. Were this court to hold otherwise, this decision would be a license to all State employees assigned to custodial positions to pillage and plunder, and engage in licentious conduct with whomsoever they were charged to protect.
Furthermore, Mr. Vernon Douglas was in the courtroom during the trial of the case. At all the times mentioned in the claim he was a supervisor at the New York State Training School for G-irls where the infant claimant was a student. Mr. Douglas did not deny the rape of Elizabeth Cobb and as such his failure to so deny gave rise to the inference that his testimony would have been damaging and unfavorable to the State of New York. (Kirkpatrick v. Allemannia Fire Ins. Co., 102 App. Div. 327 [1905], affd. 184 N. Y. 546; Hicks v. Nassau Elec. R. R. Co., 47 App Div. 479 [1900]; Cushman v. De Mallie, 46 App. Div. 379 [1899].)
On the other hand, it would have served no useful purpose for the claimants to call Mr. Vernon Douglas because of his status as a hostile witness. (See Hayden v. New York Ry. Co., 233 N. Y. 34 [1922]; Peers v. State of New York, 6 Misc 2d 779 [1957].)
It is the decision of the court that upon all of the evidence adduced at the trial, Vernon Douglas perpetrated a forcible assault and rape on the person of Elizabeth Cobb which resulted in her pregnancy and subsequent miscarriage; that the State was negligent in failing to provide adequate care and .supervision of its ward, the infant claimant; and that the State is liable for the conduct of its employee, Vernon Douglas.
*285 After due and deliberate consideration, the court has arrived at the sum of $5,000 as the stun which should be awarded to the infant claimant herein as compensatory damages and an award in such amount is hereby made.